UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HARMEET S.,

        Petitioner,

    v.

SERGIO ALBARRAN, et al.,

        Respondents.

No. 1:26-cv-00183-TLN-DMC

**ORDER**

    This matter is before the Court on Petitioner Harmeet S.'s[1] ("Petitioner") Ex-Parte Motion for a Temporary Restraining Order ("TRO").  (ECF No. 2.)  For the reasons set forth below, Petitioner's Motion is GRANTED.

    **I.**    **FACTUAL AND PROCEDURAL BACKGROUND**

    Petitioner is twenty-one-years-old and is a native and citizen of India.  (ECF No. 1 at 4.)  Petitioner entered the United States on or about August 14, 2022.  (*Id.*)  On September 16, 2022,

---

[1]    As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information.  *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.  The Clerk of Court is directed to update the docket to reflect this change accordingly.

1

Petitioner was released as a minor by the Office of Refugee Resettlement ("ORR") pursuant to section 462 of the Homeland Security Act of 2002 and section 235 of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA").  (ECF No. 1-3 at 2.)

Petitioner has applied for an I-360 petition for Special Immigrant Juvenile Status and has filed an application for asylum and withholding of removal and protection under the Convention Against Torture.  (*Id.* at 4–5, 13.)  These proceedings remain pending.  (*Id.*)  Petitioner's master hearing is scheduled for February 11, 2026.  (*Id.* at 6.)

On September 30, 2025, Petitioner was enrolled in the Alternatives to Detention ("ATD") program administered by the U.S. Department of Homeland Security ("DHS").  (ECF No. 2-2 at 4; ECF No. 1-3 at 12.)  In the weeks leading up to his detention, Petitioner attempted to upload a required photograph to the mobile application used for the ATD program but was unable to do so due to a system error message.  (ECF No. 2-2 at 4–5.)  Petitioner immediately contacted the application's support system to report the issue and was informed the application was undergoing an update and other participants were experiencing the same issue.  (*Id.* at 5.)  Petitioner was told the failed submission would not be considered a violation and he could upload his photograph once the update was resolved.  (*Id.*)  Petitioner later successfully updated his photograph.  (*Id.*)

On November 26, 2025, Petitioner appeared for an in-person check-in with U.S. Immigration and Customs Enforcement ("ICE").  (ECF No. 2-2 at 4.)  Petitioner was detained without notice or explanation of any alleged violation.  (*Id.*)

Petitioner has been detained at the California City Corrections Center without a bond hearing for over a month.  (*Id.*; ECF No. 1 at 2, 6.)  Petitioner states he has no criminal history, has complied with all the requirements imposed upon him, including electronic check-ins and attendance at immigration court hearings.  (ECF No. 1 at 4.)

On January 12, 2025, Petitioner filed a writ of habeas corpus.  (*See generally id.*)  The same day, Petitioner filed a TRO challenging the constitutionality of his detention and seeking immediate release.  (ECF No. 2.)

///

///

2

**II.      STANDARD OF LAW**

For a TRO, courts consider whether a petitioner has established: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

**III.      ANALYSIS**[2]

A.      Likelihood of Success on the Merits

Petitioner has established a likelihood of success on his due process claim.[3] The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights

---

[2]      The Court finds Petitioner has met the requirements for issuing a temporary restraining order without notice. *See* Fed. R. Civ. P. 65(b); (ECF No. 2-2 at 26.) *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) (similarly finding requirements for TRO were met without notice); *Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (same).

[3]      Given this, the Court does not address Petitioner's other claims.

3

extend to immigration proceedings. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, Petitioner gained a liberty interest in his continued freedom when he was released as a minor under the TVPRA on September 16, 2022. Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release. Petitioner states he has complied with all the conditions of his release, he has no criminal record, and upon his detention, ICE proffered no reason for the revocation of his release. (ECF No. 2-2 at 4.) Moreover, for approximately three years,

4

Petitioner lived continuously in the United States and developed strong ties to his local community.  (ECF No. 2-2 at 20; ECF No. 1-3 at 23–24 (character reference letters, including letter from fiancé).)  As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest); *F.S.S.M. v. Wofford*, No. 1:25-CV-01518-TLN-AC, 2025 WL 3526671, at *5 (E.D. Cal. Dec. 9, 2025) (finding protected liberty interest where government represented petitioner was released pursuant to the TVPRA).

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention.  As discussed above, Petitioner was out of custody for approximately three years, had built a life in the United States, and has complied with all the requirements imposed on him.  Despite that, Petitioner has now been detained for over a month without being afforded a bond hearing.  Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any bond or custody redetermination hearing.  "Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community." *R.D.T.M.*, 2025 WL 2617255, at *4 (internal quotation and citation omitted).  Petitioner represents he has no criminal history and has complied with all the requirements

5

imposed on him.  (ECF No. 1 at 4.)  Based on this record, the Court finds there is a serious likelihood Petitioner will be erroneously deprived of his liberty interest.  Moreover, without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high.  *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Indeed, it would be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his asylum case than to continue to detain him.  Additionally, Respondents have not supplied Petitioner with any legitimate interest for detaining him.  "The government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions.").  *Hernandez*, 872 F.3d at 994.  When Petitioner entered the United States, he was inspected by an immigration officer and released.  Petitioner would not have been released if he were deemed a flight risk or danger to the community.  Moreover, Petitioner asserts he has complied with all the requirements imposed on him and asserts he has no criminal record.

On balance, the Court finds the *Matthews* factors demonstrate Petitioner is entitled to due process: a hearing to determine whether detention is warranted.  Accordingly, with respect to his due process claim, Petitioner has shown he is likely to succeed on the merits.

              B.      <u>Irreparable Harm</u>

Petitioner has also established he will suffer irreparable harm in the absence of a TRO.  The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention[.]"  *Hernandez*, 872 F.3d at 995.  Such harm is present here.  Petitioner has been detained for over three months without a bond hearing and "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

C.   Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  First, the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002.  Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).

In sum, these last two factors weigh in Petitioner's favor.  Therefore, the Court GRANTS Petitioner's Motion for a TRO.  (ECF No. 2.)

**IV.   CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for a Temporary Restraining Order (ECF No. 2) is GRANTED.

2. Respondents must IMMEDIATELY RELEASE Petitioner HARMEET S. from custody under the same conditions as he was released previously, prior to his November 26, 2025 detention.  Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.

3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation/custody hearing before a neutral decisionmaker, where the Government shall bear the burden of proving by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk, and Petitioner shall be allowed to have his counsel present.

4. Respondents are ORDERED TO SHOW CAUSE why this Court should not issue a

7

preliminary injunction continuing this order.  Respondents shall file responsive papers by **Wednesday, January 21, 2026**.  Petitioner may file a reply, if any, by **Friday, January 23, 2026**.  **The parties shall indicate in their briefing whether they waive a hearing**.  Fed. R. Civ. P. 65(b)(3).  The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule.

5.  Petitioner is ORDERED to immediately serve this Temporary Restraining Order and Order to Show Cause on Respondents at usacae.ecf2241-imm@usdoj.gov.  Petitioner shall file proof of such service no later than **9 a.m. on January 13, 2026.**

6.  Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the Temporary Restraining Order on two days' notice to Petitioner.  Fed. R. Civ. P. 65(b)(4).

7.  The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

8.  The Clerk of Court is DIRECTED to update the docket to only list Petitioner's first name and last initial.

IT IS SO ORDERED.

Date: January 12, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE